MOORE & TABB v. JOHNSON COUNTY SAVINGS BANK.

[58 South. 646.]

BILLS AND NOTES. *Defenses. Admissibility.*

> In a suit on a draft indorsed in blank by the drawer so as to make it negotiable by delivery, no 'defenses available between the original parties are admissible; but where such draft is specially indorsed our anti-commercial statute applies and all defenses available between the original parties can be pleaded.

APPEAL from the circuit court of Chickasaw county. HON. H. K. MAHON, Judge.

Suit by Johnson County Savings Bank against Moore & Tabb. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Joe H. Ford,* for appellant.

The court should have admitted the evidence offered on behalf of appellants in the court below. It will be noted that the orders or acceptances in this case were drawn by the Puritan Manufacturing Co. at Iowa City, Iowa, and were addressed and forwarded to appellants at Houston, Miss., for acceptance there. They were received in due course and accepted by appellants at their place of business in Houston, with the agreement that they were payable at the Branch Bank of the Okolona Banking Co., at Houston, and were payable to order. It was not stated in the acceptances where it should be paid. Thus the question, "Where were the drafts or acceptances payable, and does the law of Mississippi govern?" was the question to be answered. The appellants took the position that they were payable at Houston, Mississippi, and that therefore they could make the defenses attempted under Sec. 3503, Code of 1892 (Sec. 4001, Code 1906). Appellee took the position that they were payable in Iowa City, Iowa, and that therefore the Mississippi law did not apply. 1—Let it be noted that the acceptances were drawn in Iowa City, Iowa, in favor of the Puritan Manufacturing Co., or order, and were addressed, "To Moore & Tabb, Houston, Miss." On the face was written, "Accepted, Moore & Tabb." No place of payment was designated in the face of the bills. Therefore they were payable, under the law, at the residence or address of acceptors, which was Houston, Miss. *Frazier* v. *Warfield,* 9 S. & M. 220; *Fellows* v. *Harris,* 12 S. & M. 462; *Freese* v. *Brownell,* 35 N. J. 285, 10 Am. Rep. 239; *Cox* v. *New York Nat. Bank,* 100 U. S. 704, 25 L. Ed. 739; 7 Cyc. 605, and a great number of authorities cited in note 45; Norton on Bills & Notes (3 Ed.), p. 186; *Miller* v. *Bank,* 76 Miss. 84; 1 Randolph on Com. Paper (2 Ed.), Sec. 26, p. 25 and Sec. 122.

This evidence was admissible to show where the bills were actually accepted, it being the law that the law

which governs acceptors' liability is at the place where it is accepted, that place in this case being Houston, Miss., which was likewise the place to which the bills were addressed to appellants, and where they reside, This is the law unless the contrary is expressed in the bill. Norton on Bills & Notes (3 Ed.), p. 186; 7 Cyc. 782-E., and other authorities there cited; 8 Cyc. 272 (Ill.); 2— But it is further said, that even if the acceptances are governed by the Mississippi law, yet in as much as they were drawn by the Puritan Manufacturing Co., payable to the Puritan Manufacturing Co., or order, that our anticommercial statute does not apply, and that the defenses attempted to be set up by the evidence offered by the defendants in this cause could not be made to said acceptances in the hands of Johnson County Savings Bank, on the theory that such bills so drawn and payable are in reality payable to bearer,—citing as authority for that position, *Gillespie* v. *Oil Mill,* 76 Miss. 406, *Bank* v. *Wofford,* 71 Miss. 712, and the many other cases holding that our anticommercial statute does not apply to notes and bills of exchange made payable to bearer, or to order of the drawer or maker or subsequently indorsed by him in blank, which are equivalent to notes and bills of exchange payable to bearer originally. The law of those cases cannot be disputed when applied to the proper facts, but the rules laid down therein certainly do not apply in the case at bar.

It will be noted, by reference to the originals attached to page 29 of the transcript, that these acceptances were indorsed as follows: "May 24, 1904, Pay Johnson County Savings Bank, Iowa City, Iowa, or order, Puritan Manufacturing Co." This being not an indorsement in blank by the Puritan Manufacturing Co., the original drawer and payee, but a special indorsement. An indorsement in blank specifies no indorsee, or, in other words, names no special person to whom the instrument shall be paid. Norton on Bills & Notes (3 Ed.), p. 110,

*et seq.;* 7 Cyc. 799; 1 Randolph on Com. Paper '(2 Ed.),
Sec. 13, p. 13; 2 Randolph on Com. Paper. (2 Ed.), Sec.
705.

Wherever the indorsement specifies the person to
whom, or to whose order the instrument is payable, it
is a special indorsement and can only be collected by
the person named in such indorsement, or assigned by
his subsequent indorsement.

Norton on Bills & Notes, p. 116 (3 Ed.), *et seq.*; notes
and bills of exchange indorsed specially are not payable
to bearer unless the original note or bill of exchange is
payable to bearer, and therefore stands upon the same
footing of a note or bill of exchange payable to order
and not indorsed at all. The same defenses may be made
to a special indorsee under our anticommercial statute
as may be made by the maker or acceptor to the original
payee or drawee. A clear distinction is made between
such instruments made payable to bearer, or to order,
and indorsed in blank, and those which are made pay-
able to order originally, and indorsed specially. Nor-
ton on Bills & Notes (3 Ed.), p. 116, *et seq.; Bank* v.
*Wofford,* 71 Miss. 711; *Gillespie* v. *Oil Mill,* 76 Miss.
406; and many other authorities from Mississippi cited
in these two cases in our own court.

Many other cases from other states could be cited,
but it is unnecessary since they make the same distinc-
tion between special and blank indorsements, and bills
and notes payable to order and to bearer, as our state
makes. This can be very clearly seen by reference to
*Poorman* v. *Mills,* 35 Cal. 118, 95 Am. Dec. 90; *Johnson*
v. *Mitchell,* 50 Tex. 212, 32 Am. Rep. 602; and *Voss* v.
*Chamberlin,* 117 N. W. 269, 19 L. R. A. (N. S.) 106. In
these cases it may be seen by reading them that the court
says that a note or bill of exchange payable to order and
indorsed in blank, are by such indorsement payable to
bearer "so long as such indorsement continues." In
the case of *Voss* v. *Chamberlin, supra,* being the case

decided by the supreme court of Iowa, notes were taken payable to three parties, or order. The notes were indorsed by the payee to three parties, or order. The notes were indorsed by the payees simply writing on the back thereof, in substance, a guarantee of payment, waiving demand, notice or protest, without stating in the indorsement the name of any particular indorsee. These notes were then placed in the Exchange Bank, presumably for safe keeping, so indorsed. Said notes were taken by the Exchange Bank without the knowledge or consent of the payees and indorsers, and pledged as security to the Bank of Denison, of which C. L. Voss, the plaintiff, was the cashier, the latter being *bona fide* purchasers, without notice of any fraud on the part of the Exchange Bank. The Bank of Denison brought suit to recover the amount of said notes. The payee and indorsers, Chamberlin et al., defended on the ground that the notes, being payable to order, could not be collected by the bank to whom they had not been specially indorsed, and that they had a right to set up the fraud of the Exchange Bank as a defense in transferring the notes to the Denison Bank. The Denison Bank claimed that the indorsement on the back of those notes was nothing more than a blank indorsement, and, therefore, said notes by such blank indorsement, thus became payable to bearer, and could be collected by them as *bona fide* purchasers. The defendants contended that such indorsement amounted only to a guarantee that the notes were good, and did not constitute an indorsement at all, or at least did not constitute an indorsement in blank. Thus the question to be decided in that case, was whether it was an indorsement in blank. If it amounted to an indorsement in blank, it was payable to bearer; and the Bank of Denison, being the bearer, could collect. If it was not an indorsement in blank, the notes being payable to order, the Bank of Denison, the bearer, could not collect. The court held that it was nothing

more than an indorsement in blank, and having fallen in the hands of the Bank of Denison, *bona fide* purchasers, they could not collect them.

The indorsement of the bills of exchange in the case at bar, which are themselves payable to order, not having been indorsed in blank, but specially indorsed to Johnson County Savings Bank, "or order," did not fall within the class of those decisions of our court, to wit: *Bank* v. *Wofford, Gillespie* v. *Oil Mill,* and many other cases cited above.

And the same defenses that could be made by appellants against the Puritan Manufacturing Co., the original payees and drawers, could be made against the Johnson County Savings Bank, the special indorsees, and the exclusion by the court of the original contract and other evidence offered by appellant in the court below, establishing fraud, failure of consideration, want of consideration, and damages resulting from breach of warranty on the part of the Puritan Manufacturing Co., under our anticommercial statute, was error. This case is governed by *Miller* v. *Bank,* 76 Miss. 84; *Brown* v. *Bank,* 62 Miss. 54; *Wilkinson* v. *Searles,* 70 Miss. 392; *Millsaps* v. *Bank,* 69 Miss. 918.

*L. P. Haley,* for appellees.

These bills of exchange were Iowa contracts. A casual reading will disclose this fact. They read as follows: "Puritan Manufacturing Co., Iowa City, Iowa, March 29, 1904. Ten months after date pay to the Puritan Manufacturing Co., etc. . . . " The only question is, where is the domicile of the Puritan Manufacturing Co.?

These bills of exchange were indorsed to the appellees in Iowa City, Iowa, and the domicile of appellees is Iowa City, Iowa. The bank in Houston, Mississippi, simply acted as the agent of appellees for the collection of the bills of exchange, and that fact has nothing to do

with the place of payment. The law of the place of payment will determine the acceptor's liability, if such place is expressed in the instrument. Randolph on Commercial Paper, Sec. 31, p. 34. This was a straight indorsement, such as is used in all the commercial world. A stencil or blank indorsement in *Bank* v. *Wofford,* 71 Miss. 711, Chief Justice Campbell said: ''The application of the doctrine has been to paper payable in terms to bearer, but not a note payable to the order of the maker, and indorsed by him, is, when it comes into being as an inforcible contract, payable to bearer, although not so expressed. It is nothing until indorsed and delivered, and then it is payable to bearer, and transferable by delivery and all the reasoning applicable to instruments payable to bearer applies in full force to it. It follows that both are on the same footing, and there is no magic in the word ''bearer,'' etc. . . '' In *Gillespie* v. *Oil Mill,* 76 Miss. 406, it is decided: That the holder of a bill of exchange to drawer and by him indorsed in blank, is *prima facie* a *bona fide* holder for value.

''The act of acceptance operates as an estoppel in respect to any antecedent matter. Want of consideration cannot be set up.''

Joyce on Defenses to Commercial Paper, Sec. 641, p. 793: ''An unconditional acceptance binds the acceptor as to a *bona fide* payee or holder for value.''

Joyce on Defenses to Commercial Paper, Secs. 199 and 203: ''The counsel for appellants in this case has recently had some experience in litigation similar to this case now at bar in the case of *Cologers* v. *Cedar Rapids National Bank,* 55 South. 489. And this case simply followed the case of *National Bank* v. *Rhodes,* 96 Miss. 700. In the Cologers case the note was torn from the contract and a perforation was clearly to be seen on the note. The note was made at the same time the contract was made, and was made in the city of Okolona, Mississippi. However, the note read Cedar Rapids, Iowa, and was dated the same date as the contract.

Story on Bills of Exchange, Sec. 252, says: "When acceptance is once made, if the bill of exchange has been delivered to the holder, the transaction is complete and the acceptance is irrevocable." In the case at bar the making of the contract was a complete transaction—also (as set out in the contract) the closing of the account by giving four acceptances, was another complete transaction. Not only did appellants close the account by giving four acceptances, but they actually paid to appellees two of these acceptances without a murmur.

A clearer case of estoppel could not be had. Appellants cannot be heard to complain at this late day. They put this negotiable paper out on the world and proceeded to pay them, and they certainly cannot at this late day complain. *Davis* v. *McCready*, 72 Am. Dec. 461. By reading the facts in *Miller* v. *Bank*, 76 Miss. 84, it will be seen that this case does not apply to the one at bar.

Cook, J., delivered the opinion of the court.

The appellants, Moore & Tabb, were engaged in the drug business in Houston, Miss., and carried jewelry as a side line. A persuasive salesman from Iowa City, Iowa, called upon the firm, and spread before them alluring pictures and circulars advertising the high grade and valuable line of jewelry manufactured by the Puritan Manufacturing Company, of Iowa City, Iowa. This line of jewelry was strictly first-class, and the attractive contract offered to buyers seemed to guarantee the selected few, who were privileged to handle the goods of the Puritan Company, against all loss or damage which could result from slow sales or any other possible contingency. Of course, this sure thing could not be overlooked, and a contract was unhesitatingly signed up. The goods were promptly forwarded to the purchasers, and drafts were signed and returned to Iowa City, Iowa. The drafts read as follows:

"Puritan Mfg. Co. No. 3,591. Iowa City, Iowa, Mch. 29, 1904. Ten months after date pay to the order of the Puritan Mfg. Company, Iowa City, Iowa, ninety-five dollars ($95.00), value received, and charge to the account of Puritan Mfg. Company, per ——. To Moore & Tabb, Houston, Miss. [Signed.]"

Customer's acceptance: "Accepted. Moore & Tabb. [Copy.] Accepted."

Indorsements: "3|27|05. May 24, 1904. Pay Johnson County Savings Bank, Iowa City, Iowa, or order. Puritan Mfg. Co."

"Puritan Mfg. Company. [Copy.] Iowa City, Iowa, Mch. 29, 1904. Ten months after date pay to the order of the Puritan Mfg. Company, at Iowa City, Iowa, ninety-five dollars ($95.00), value received, and charge to account of Puritan Mfg. Company, per M ——. To Moore & Tabb, Houston, Miss."

Customer's acceptance: "Accepted. Moore & Tabb, Accepted."

After these goods had arrived, they were offered to the customers of Moore & Tabb, some of whom were unlucky enough to buy. Time disclosed that Moore & Tabb had been swindled. The goods of quality were brass and altogether worthless. In the meantime two payments had been made; but when the two, which are the foundation of this suit, were presented, appellants refused to pay. Therefore this suit. Upon the trial, appellants offered to show failure of consideration for the acceptances and fraud on the part of the sellers of the jewelry and drawers of the drafts sued on. The court below refused to permit this testimony to go to the jury. It was claimed by appellee, the Johnson County Savings Bank, of Iowa City, Iowa, that they were purchasers for value of the acceptances; that they knew nothing about the fraud, or failure of consideration; that they had bought this paper in good faith; that the acceptances were payable to bearer. Appellants claimed

the protection of our anticommercial statute; but the court could not see it that way, and appellants, feeling injured, appeal to this court.

Counsel for appellee cites in support of the action of the trial court the following decisions of this court, viz.: *Bank* v. *Wofford,* 71 Miss. 711, 14 South. 262; *Gillespie* v. *Oil Mill,* 76 Miss. 406, 24 South. 900; *National Bank* v. *Rhodes,* 96 Miss. 700, 51 South. 717. These cases are said to uphold the contention that the acceptances sued on are, in legal contemplation, payable to bearer. The first case cited, *Bank* v. *Wofford,* was a suit upon notes made by the defendants and payable to the order of themselves, and after being indorsed in blank by the maker fell into the hands of innocent purchasers for value. The court held that the notes were made payable to bearer by the indorsement in blank of the maker, the maker and payee being one and the same person; that this indorsement made them transferable by delivery, and therefore the defense of failure of consideration was not available. In *Gillespie* v. *Oil Mill,* W. A. Drenman drew a draft on the Oil Mill, payable to his own order, and indorsed it in blank. Of course, this draft became payable to bearer, because of the indorsement in blank by the maker. This indorsement in blank, when accepted, formed a part of the original note. The case of *Bank* v. *Rhodes, supra,* 96 Miss. 700, 51 South. 717, is not applicable to any phase of the case at bar. The note in question in that case was in its terms payable to bearer, and the maker undertook to avail himself of the defense that he did not intend to sign the note as it was drawn, and that he was misled into signing it.

Visibly the circuit judge misconceived the facts in the cases cited. In *Bank* v. *Wofford,* above referred to, the suit was against the drawer, or maker of paper payable to his own order, which had by him been indorsed in blank. In the instant case the acceptance which is the subject of this lawsuit was not indorsed in blank by any-

body.   This case is clearly distinguishable from the cases relied upon by appellee.   In those cases this court announced the law to be that notes or drafts payable to the order of the maker, or drawer, and indorsed in blank by the maker, or indorser, when negotiated, would be treated as commercial paper payable to bearer, because they were negotiable and the holder obtained title by the mere delivery.

The acceptances sued on here were not "indorsed in blank," as the term is understood in commerce and as defined by the law.   An indorsement in blank is made by the mere writing of the indorser's name on the back of the bill, without mention of the name of any person in whose favor the indorsement is made.   Indorsement in blank is contradistinguished from indorsement in full, or special indorsement, and they are all technical terms, well understood by the business world.

If the Puritan Manufacturing Company had merely written its corporate name across the back of the acceptances, it may be conceded for the purposes of this case that the acceptors could not avail themselves of the defenses afforded by our anticommercial statute.   This court seems to have so held in *Gillespie* v. *Oil Mill, supra.*   Let it be noted that the instrument construed in that case was indorsed in blank, while in the instant case the indorsement mentioned the name of the indorsee and directed the paper to be paid to the order of the indorsee named.

The special indorsee still owns the acceptances, and so long as they remain unindorsed by the Johnson County Savings Bank, who was plaintiff below, title to same will remain in the bank.   A mere delivery to a third party of the acceptances with only the present indorsements would not carry ownership, and the party so holding them could not maintain a suit for their collection.   When Moore & Tabb wrote their acceptance upon the face of the drafts, they agreed to pay them accord-

ing to their terms; and following this court in *Gillespie v. Oil Mill*, as construed by appellee, we may agree that the Puritan Manufacturing Company could have made the paper payable to bearer, in legal effect, by simply writing its name upon the back. This would have been an indorsement in blank. Fortunately, for appellants, this was not done. It is altogether probable that appellee is not the owner of the paper, but simply holds it for collection; but, however that may be, the special indorsement does not make the acceptances negotiable by delivery. They cannot be so negotiated, until they are indorsed by the Johnson County Savings Bank, and have never assumed the characteristics of notes payable to bearer.

The appellants should have been permitted to plead any defenses which they could have properly made against the Puritan Manufacturing Company.

It will be noted that we have adopted appellee's construction of *Gillespie* v. *Oil Mill*. We think, however, that the record shows that the drawer of the draft construed in that case indorsed it in blank before it was presented and accepted by the Oil Mill, which makes a different case from the one here, even if the indorsement of the Puritan Manufacturing Company could be termed an indorsement in blank.

*Reversed and remanded.*